CLARA R. FULLER,

        **Plaintiff,**

v.

                                          Case No. 16-2415-DDC-JPO

STATE OF KANSAS, DEPARTMENT
OF CHILDREN & FAMILIES, et al.,

        **Defendants.**

---

## MEMORANDUM AND ORDER

This latest motion represents defendants' fourth motion asking the court to dismiss the case before discovery even begins. It's what Yogi Berra[1] meant with this classic Yogi-ism, "It's like déjà vu all over again."

Plaintiff Clara R. Fuller alleges that defendant, the Kansas Department of Children and Families ("DCF"), discriminated against her because of her race, gender, and age, acting through defendants Stephanie Henderson, Lewis Kimsey, Lisa Locke, and Sandra Kimmons (collectively, the "DCF employees"). The defendants did so, plaintiff asserts, both when DCF hired her and it fired her. Plaintiff, proceeding pro se, has filed an Amended Complaint (Doc. 33) asserting claims under Title VII, the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1983. She sues the DCF employees in their official and individual capacities. The Amended Complaint does not name DCF explicitly as a defendant. But the court already has ruled that any suit brought against the DCF employees in their official capacity is a suit against DCF. Doc. 36 at 3. *See also Bell v. City of Topeka, Kan.*, No. 06-4026-JAR, 2007 WL 628188,

---

[1]         Catcher, New York Yankees (1946–1963), and Manager, New York Yankees (1964, 1984–1985)

at *3 (D. Kan. Feb. 26, 2007) ("Official capacity suits are treated in all respects as suits against the underlying entity.").

This matter comes before the court on defendants' Motion to Dismiss (Doc. 55). They argue that the court should dismiss the case under Rule 12(b)(6) because the Complaint fails to state a claim for relief.

## I.    Facts

The court takes the following facts from plaintiff's Amended Complaint (Doc. 33) and construes them in the light most favorable to her. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). And because plaintiff proceeds pro se, the court construes her pleadings liberally. *Ghailani v. Sessions*, 859 F.3d 1295, 1303 (10th Cir. 2017).

This case revolves around plaintiff's employment with the Low Income Energy Assistance Program ("LIEAP"), which DCF oversees. DCF receives funding from the federal government under LIEAP to help low-income families pay their home energy costs. Plaintiff first worked for LIEAP from January 2014 to May 2014. The Complaint never explains why plaintiff stopped working for LIEAP in 2014. But sometime in 2015, plaintiff reapplied to LIEAP for a temporary job. When Mr. Kimsey[2] interviewed her in 2015, he required plaintiff to produce a written performance evaluation from a previous employer even though Mr. Kimsey never had required any other applicant to produce such an evaluation. Plaintiff asked if she could use Veronica Knight—plaintiff's previous supervisor at LIEAP—as a reference. Mr. Kimsey would not allow it. Plaintiff eventually produced a recommendation from a different employer, but Mr. Kimsey hired plaintiff only after consulting with his superior at DCF, Ms. Kimmons. This was something Mr. Kimsey never had done with any other job applicant. Most

---

[2]        The Complaint is not clear about Mr. Kimsey's exact role within DCF.

of DCF's new hires were white, and younger than plaintiff.  On January 4, 2016, plaintiff began her second stint as LIEAP's employee.

In that job, plaintiff processed applications from families seeking funding from LIEAP. In daily meetings, Ms. Henderson—plaintiff's direct supervisor—told her that LIEAP had a daily quota for the number of applications it must process.  Ms. Henderson did not require plaintiff or any other employee to process a certain number of applications each day, however.

Two weeks after plaintiff finished her training and began processing applications, Ms. Henderson recommended to Mr. Kimsey and Ms. Kimmons that they terminate plaintiff's employment because, according to Ms. Henderson, plaintiff's work was subpar.  But other LIEAP employees processed fewer applications than plaintiff yet no evidence exists that DCF terminated those employees' employment.  And LIEAP, on an agency-wide basis, was not meeting its daily application quota.  Mr. Kimsey and Ms. Kimmons conferred and agreed to terminate plaintiff's employment even though they had no knowledge about her work performance.  In February 2016, Ms. Henderson called plaintiff and told her to come to the personnel department.  When plaintiff asked why Ms. Henderson wanted her to come there, Ms. Henderson replied that she had no idea.  But, in reality, Ms. Henderson knew exactly what was going to happen once plaintiff arrived at the personnel department.  When plaintiff arrived there, Ms. Locke[3] terminated plaintiff's employment by handing her a letter signed by Ms. Kimmons. Mr. Kimsey later claimed that DCF terminated her employment because of her subpar work performance.

_____

[3]     The Complaint does not provide Ms. Locke's job title.

## II.     Legal Standard

On a motion to dismiss for failure to state a claim, the court accepts all facts pleaded by the non-moving party as true and draws any reasonable inferences in favor of the non-moving party. *Brokers' Choice of Am.*, 757 F.3d at 1136. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original)).

Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This is so because the court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 557 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation omitted)).

When construing a pro se plaintiff's pleadings, the court must hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This means "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite

proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id.*

## III.    Discussion

Before it turns to defendants' substantive arguments, the court clarifies two important points.  First, as the court explained in an earlier Memorandum and Order, all claims asserted against the DCF employees in their official capacity are claims against DCF.  Doc. 36 at 3 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).[4]  Hoping it will clarify the court's work analyzing a confusing and overgrown set of allegations, this Order refers to the defendants sued on plaintiff's official capacity claims as the "DCF officials."  And it refers to the defendants sued on plaintiff's individual capacity claims as the "individual defendants."

Second, apprehending the legal theory invoked by the Amended Complaint isn't particularly easy.  It identifies three discrete claims identified as Count I, Count II, and Count III. Count I asserts plaintiff "was discriminated against due to race, age and gender" but it never alleges a particular practice that is discriminatory.  The closest it comes is alleging that most new hires were young and white.  Doc. 33 at 3.  Count II alleges, "[Plaintiff] was discriminated against during the hiring process" when Mr. Kimsey required plaintiff to secure a written evaluation from a previous employer of hers even though he never required from any other job applicant to provide such an evaluation.  *Id.* at 3–4.  Count III contends that plaintiff was "unfairly terminated" because the DCF officials terminated her for her allegedly poor work performance even though other young, white employees performed more poorly.

Given these allegations, the court construes the Complaint to invoke two legal theories for her claims against the DCF officials:  the ADEA and Title VII.  And the court construes the

---

[4]    As the Supreme Court explained in *Will*, "Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is a suit against the official's office . . . .  As such, it is no different from a suit against the State itself."  491 U.S. at 71 (citations omitted).

Complaint to assert two distinct ADEA and Title VII violations. First, the Complaint alleges that the DCF officials unlawfully discriminated against plaintiff when they hired her. And second, the Complaint asserts that the DCF officials violated the ADEA and Title VII when they fired her.

The Complaint also invokes 42 U.S.C. § 1983 as a basis of jurisdiction because it alleges that plaintiff's "constitutional rights, privileges or immunities have been violated . . . ." *Id.* at 2.[5] The court construes the Complaint to assert the § 1983 claim against the individual defendants because plaintiff cannot sue the DCF officials under § 1983. *See Will*, 491 U.S. at 71 (holding that a plaintiff cannot sue a state official in his or her official capacity under § 1983 because sovereign immunity protects state officials in their official capacity).[6]

The DCF officials argue that plaintiff never alleges facts that, if true, could entitle her to relief under ADEA and Title VII. They contend that the Complaint fails to state a Title VII claim because plaintiff alleges no facts that could support liability under Title VII. And, the DCF officials argue, the court should dismiss the Complaint's claims under the ADEA because sovereign immunity protects them from those claims. The court discusses the DCF officials' arguments in the next two subsections, below.

---

[5]     Defendants argue that plaintiff has abandoned this claim because she does not cite 42 U.S.C. § 1983 specifically in her Complaint. If a lawyer drafted this Complaint, the court might agree; but plaintiff proceeds pro se and she need not cite legal authority with specificity. *See Hall*, 935 F.2d at 1110 ("[I]f the court can reasonably read [a pro se plaintiff's] pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure *to cite proper legal authority*, [her] confusion of various legal theories, . . . or [her] unfamiliarity with pleading requirements." (emphasis added)).

[6]     Plaintiff cannot assert a claim against the individual defendants for violating Title VII and ADEA because neither provision allows for individual liability. *See Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (explaining that ADEA and Title VII define "employer" identically and concluding that both "preclude[] personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition").

## A.    Title VII

Title VII prohibits an employer from discriminating against anyone because of that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a Title VII discrimination claim sufficiently, plaintiff must establish that "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Plaintiff need not *establish* these elements to survive a Rule 12(b)(6) motion. *Id.* at 1193. She only needs to allege facts that, if true, plausibly allow a factfinder to conclude that the DCF officials violated Title VII. *Id.*

*Khalik* provides helpful guidance for evaluating the present motion. There, the Complaint alleged that defendant had terminated the plaintiff's employment because she was Arab-American, Muslim, and born in Kuwait. *Id.* at 1189. The Complaint claimed that this amounted to unlawful discrimination in violation of Title VII. *Id.* at 1190. Defendant moved to dismiss the case under Rule 12(b)(6), arguing that the Complaint failed to allege a Title VII claim sufficiently. *Id.* The district court granted defendant's motion, and plaintiff appealed. *Id.*

The Tenth Circuit affirmed. *Id.* at 1194. The Circuit noted that the only factual allegations in the Complaint alleged that (1) plaintiff was an Arab-American who was born in Kuwait, (2) she was a practicing Muslim, (3) she performed her job well, and (4) defendant terminated her employment. *Id.* at 1193–94. Importantly, the Complaint never alleged any facts about similarly situated employees who defendant treated differently. *Id.* at 1194. The Circuit explained that this shortcoming was fatal to her Complaint because plaintiff should know, before discovery, begins how defendant treated her differently than similarly situated employees. *Id.*

Using *Khalik* as a guide, the court turns to the DCF officials' arguments about this Complaint. The DCF officials argue that the Complaint fails to state a Title VII violation for the discriminatory hiring process because, after all, the same Complaint also alleges that the DCF officials hired plaintiff. This allegation, the DCF officials argue, precludes plaintiff from establishing the second element in a Title VII discrimination case—that plaintiff suffered an adverse employment action. Indeed, an adverse employment action under Title VII requires evidence that defendant refused to hire plaintiff, or otherwise caused some "significant" change in her employment status. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012). A mere inconvenience will not meet this standard. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017). Here, the Complaint alleges that the DCF officials required plaintiff to secure a written evaluation from a former employer before they hired her. But, the Complaint continues, they hired her once she produced this evaluation. The Complaint alleges no facts, if proved true, could permit a finding that having to secure this evaluation affected her job benefits or future employment opportunities. *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004) (holding that employment actions having a minimal effect on employee's employment do not constitute an adverse action under Title VII). The court grants the DCF officials' motion against the claim that DCF officials discriminated against her in the hiring process.

Next, the DCF officials argue that the Complaint fails to state a plausible Title VII claim based on plaintiff's termination from her employment because the Complaint alleges no facts about similarly situated employees. Doc. 56 at 13. But unlike *Khalik*, the Complaint alleges that other employees processed fewer applications than plaintiff and yet the DCF officials never terminated their employment. 671 F.3d at 1194 (affirming the dismissal of a Complaint under

Rule 12(b)(6) where "[t]here [were] no allegations of similarly situated employees who were treated differently"). While this allegation never claims that these lower performing employees are white, construing the Complaint to assert as much is consistent with the liberal construction of pro se pleadings required by circuit precedent. *Ghailani*, 859 F.3d at 1303. After all, the Complaint alleges that the LIEAP had but a few black employees. And if plaintiff adduces evidence that other white employees processed fewer applications than plaintiff yet still retained their jobs, a reasonable jury could conclude that the DCF officials treated similarly situated employees differently than plaintiff on account of race. The Complaint thus states a Title VII claim based on termination of plaintiff's employment.

## B.     ADEA

The DCF officials argue that plaintiff cannot assert an ADEA claim against them because sovereign immunity protects them from a suit on this theory. A plaintiff cannot sue state officials in their official capacity unless either Congress abrogated their immunity or they have consented to suit. *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006). Here, nothing in ADEA abrogated the states' sovereign immunity, or that of state officials sued in their official capacity. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) ("We hold . . . that, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals.").[7] And plaintiff has alleged no facts capable of supporting a conclusion that the DCF officials or Kansas has consented to this suit. So, sovereign immunity bars any suit against the DCF officials under the ADEA. The court thus dismisses the ADEA official capacity suit.

---

[7]     In contrast, Congress validly abrogated the states' sovereign immunity when it passed Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

## IV.    Claims Against the Individual Defendants

Finally, the court addresses an issue that neither side raised.  As explained above, the Complaint asserts a claim against the individual defendants under § 1983.  Previously, these defendants argued that plaintiff never served them properly.  *See* Doc. 42 at 6.  The court agreed, and instructed plaintiff to provide the Clerk of the Court with the requisite information to serve the individual defendants properly.  Doc. 47 at 5.  Specifically, the court explained that plaintiff could serve the individual defendants properly either by (1) providing the Clerk with the addresses of the individual defendants or (2) filing an affidavit providing that she does not know where the individual defendants reside but believes they work in Kansas.  *Id.*  If plaintiff chooses the latter option, the Marshals Service could serve the individual defendants at their place of employment.  *Id.* (citing Kan. Stat. Ann. § 60-304(a)).  To date, it appears plaintiff has not provided the Clerk with any of the relevant information because the Clerk has issued no summons for the individual defendants.

A court, on its own motion, may dismiss an action for plaintiff's failure to prosecute. *McCoy v. Wyoming*, 683 F. App'x 662, 666–67 (10th Cir. 2017).  Here, the court directed plaintiff to provide the Clerk with information needed to serve the individual defendants on March 21, 2018—four months ago.  Yet, plaintiff still has not provided this information.  The court thus directs plaintiff to show cause, in writing, **by September 27, 2018** why it should not dismiss the claims against the individual defendants for failure to prosecute.

## V.    Conclusion

For reasons discussed above, the court grants defendants' Motion to Dismiss (Doc. 55) in part and denies it in part.  The court grants defendants' motion to dismiss the Complaint's ADEA claim and the portion of the Title VII claim that relies on DCF officials' conduct during the

hiring process.  But the Complaint's Title VII claim relying on the DCF officials' termination of plaintiff's employment states a plausible claim for relief.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 55) is granted in part and denied in part, as explained in this Order.

**IT IS FURTHER ORDERED THAT** plaintiff show cause, in writing, **by September 27, 2018** why the court should not dismiss the claims against the individual defendants for failure to prosecute.

**IT IS SO ORDERED.**

**Dated this 13th day of September, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**