# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CLARA R. FULLER,

       Plaintiff,

v.

       Case No. 16-2415-DDC-JPO

STATE OF KANSAS, DEPARTMENT
OF CHILDREN & FAMILIES,

       Defendant.

## MEMORANDUM AND ORDER

Pro se plaintiff Clara R. Fuller[1] brings this lawsuit against her former employer, the Kansas Department of Children and Families ("DCF"). Plaintiff alleges that DCF terminated her employment because of her race, violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17.[2]

This matter comes before the court on several motions filed by each party, including DCF's Motion for Summary Judgment (Doc. 140). For reasons explained below, the court grants DCF's Motion for Summary Judgment. And, the court dismisses the case.

---

[1] Because plaintiff proceeds pro se, the court construes her pleadings liberally and holds them to a less stringent standard than those drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of plaintiff's advocate. *Id.* Nor does plaintiff's pro se status excuse her from complying with the court's rules or facing the consequences of noncompliance. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[2] Plaintiff also had asserted claims against DCF under the Age Discrimination in Employment Act and 42 U.S.C. § 1983. But the court has held that sovereign immunity bars those claims. Doc. 23 at 5–6; Doc. 70 at 9–10; Doc. 139 at 13 (Pretrial Order ¶ 4); *see also Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) ("The subsequent pretrial order supercedes the pleadings."). Plaintiff's Title VII claim is the only claim remaining against DCF in this lawsuit.

# I.    DCF's Motion for Summary Judgment

Before turning to the substance of DCF's Motion for Summary Judgment against plaintiff's Title VII claim, the court considers two motions plaintiff has filed that address the summary judgment briefing.

## A.    Plaintiff's Motion for Reconsideration

On May 23, 2019, DCF filed its Motion for Summary Judgment. Doc. 140. Our court's local rules required plaintiff to file her Memorandum in Opposition to the Motion within 21 days. D. Kan. Rule 6.1(d)(2). On May 28, 2019, plaintiff filed a Motion for Extension of Time. Doc. 143. Plaintiff's motion asked the court for an extension of time to respond to DCF's Motion for Summary Judgment, but it never specified the amount of time she was seeking. Nevertheless, the court granted plaintiff's Motion for Extension of Time and extended her response time from June 13, 2019 to June 24, 2019. Doc. 145. And, consistent with the court's Order, plaintiff filed a Response to DCF's Motion for Summary Judgment on June 24, 2019. Doc. 149.

But, before filing that Response, on June 14, 2019, plaintiff filed a "Motion for Reconsideration for an Extension of Time to Respond to Defendant's Summary Judgment." Doc. 146. This motion is difficult to understand. It appears to respond to the court's Order granting plaintiff's Motion for Extension of Time because it explains why plaintiff neglected to cite and follow the local rule when she sought an extension of time in her original motion. But the Motion for Reconsideration doesn't ask for more time to file a response to DCF's Motion for Summary Judgment. And indeed, plaintiff filed her Response on June 24, 2019—the extended

due date.[3]  Thus, the court denies as moot plaintiff's "Motion for Reconsideration for an

Extension of Time to Respond to Defendant's Summary Judgment" (Doc. 146).

### B.        Plaintiff's Motion to Strike Exhibit Three

Plaintiff has filed a "Motion to Strike Defendants' Exhibit Three."  Doc. 148.  Plaintiff's

motion asks the court to strike one of the exhibits attached to DCF's Motion for Summary

Judgment.  And it invokes Fed. R. Civ. P. 12(f).  *Id.* at 1.  Rule 12(f) permits the court to "strike

*from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter."  Fed. R. Civ. P. 12(f) (emphasis added).  Our court has refused to apply Rule 12(f) to

strike a reply and exhibits filed with the reply because this Rule applies only to "pleadings."  *Fox*

*v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1251 (D. Kan. 2017) (citing Fed. R. Civ. P. 7(a)

(listing documents considered pleadings)); *see also Williams v. Alpine Banks of Colo.*, No. Civ.

A. 05CV02475WDMME, 2006 WL 905333, at *2 (D. Colo. Apr. 7, 2006) (denying a motion to

strike because "[o]nly [the documents listed in Rule 7(a)] constitute pleadings under the Federal

Rules" and "[m]otions, briefs in support of motions, responses to motions, replies to responses to

motions, and other papers are not pleadings under the Federal Rules and cannot be stricken by

the [c]ourt under Rule 12(f)").

Instead of striking proffered summary judgment evidence, the "better approach is for the

court to consider each [piece of proffered evidence] and, to the extent it may assert a fact which

is not admissible evidence, simply exclude the requested fact from the court's ultimate findings."

*Murray v. Edwards Cty. Sheriff's Dep't*, 453 F. Supp. 2d 1280, 1284 (D. Kan. 2006) (denying a

motion to strike an affidavit on summary judgment); *see also Jones v. Barnhart*, 349 F.3d 1260,

---

[3]        Plaintiff also filed a Supplement to her Response.  Doc. 152.  And a "Second Reply
Memorandum in Support of [Her] Motion to Resist Defendant's Motion for Summary Judgment."  Doc.
154.  Although plaintiff's filings are not proper under the court's procedural rules, the court nevertheless
has read and considered her additional filings when deciding DCF's Motion for Summary Judgment.

1270 (10th Cir. 2003) (affirming district court's evidentiary ruling that denied a motion to strike an affidavit on summary judgment and, instead, "relied on the declarations to the extent that they contained relevant and admissible material, ignoring inadmissible and irrelevant statements"); *Nelson v. Allstate Ins. Co.*, No. 92-2309-JWL, 1993 WL 105120, at *6 (D. Kan. Mar. 8, 1993) (denying a motion to strike an affidavit and holding that "[i]f the affidavit contains material that is not admissible or relevant, then it will be ignored by the court."). The court follows that approach here and thus denies plaintiff's Motion to Strike (Doc. 148).

Also, the court rejects the substance of the argument plaintiff advances in her motion— *i.e.*, that Exhibit Three is inadmissible evidence on summary judgment. Exhibit Three is a chart summarizing information taken from two of DCF's employee productivity charts. Plaintiff asserts that Exhibit Three is inadmissible because DCF didn't produce the chart during discovery. She contends "[t]his is the first time Plaintiff has actually see[n] this exhibit *in this format*." Doc. 148 at 1 (emphasis added). With this statement, plaintiff appears to concede that DCF has produced the information that the chart summarizes, but just in a different format. Indeed, DCF previously disclosed the underlying productivity charts. DCF attached the productivity charts as an exhibit to a motion that DCF filed on August 2, 2016—shortly after plaintiff filed this lawsuit. *See* Doc. 11-3 (Aff. of Ronald Blaker & Exs. A & B). Also, plaintiff has stipulated to the admissibility of the underlying productivity charts "for purposes of summary judgment and trial." Doc. 139 at 6 (Pretrial Order ¶¶ 2.b.1., 2.b.2.).

DCF argues that Exhibit Three is admissible evidence on summary judgment under Fed. R. Evid. 1006. Rule 1006 allows a proponent of evidence to "use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." The Rule requires the proponent to "make the originals or duplicates

available for examination and copying, or both, by other parties at a reasonable time and place."

*Id.* "Although the information upon which a Rule 1006 summary is created need not itself be

admitted into evidence, it must still be admissible." *United States v. Channon*, 881 F.3d 806,

810 (10th Cir. 2018) (citing *United States v. Irvin*, 682 F.3d 1254, 1261 (10th Cir. 2012)).

Here, plaintiff never argues that DCF failed to disclose the underlying data to her, or that

the underlying data is inadmissible evidence. To the contrary, the record shows that DCF

previously disclosed the productivity charts and the parties have stipulated to their admissibility.

*See* Doc. 11-3; Doc. 139 at 6. Thus, the chart summarizing the data from the underlying

productivity charts is admissible under Fed. R. Evid. 1006.

Also, the court rejects plaintiff's argument that Exhibit Three is an untimely

supplemental disclosure. Fed. R. Civ. P. 26(a)(3)(A)(iii) requires a party to "provide to the other

parties . . . an identification of each document or other exhibit, *including summaries of other*

*evidence*—separately identifying those items the party expects to offer [at trial] and those it may

offer if the need arises." *Id.* (emphasis added). And Fed. R. Civ. P. 26(a)(3)(B) requires a party

to make such disclosures "at least 30 days before trial." So, DCF had satisfied Rule 26's

disclosure requirement for trial, but this motion is lodged at the summary judgment stage.

As the Seventh Circuit has recognized, "Rule 1006 requires only that the summarized

documents be made available to the opposing party at a 'reasonable time'; it does not say when

the summaries must be made available to the party—for that matter, it nowhere states that the

summaries must be made available to the opposing party." *Fidelity Nat'l Title Ins. Co. v.*

*Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005) (Posner, J.). But, the court

continued, finding that "[n]o federal rule is needed, however, to empower a district judge to

prevent a party from springing summaries of thousands of documents on the opposing party so

late in the day that the party can't check their accuracy against the summarized documents before trial." *Id.* That's not what happened here. DCF's chart summarizes just two pages of employee productivity reports. Doc. 11-3 at 3–4 (Blaker Aff. Exs. A & B). And plaintiff had plenty of time to review the summary chart's accuracy between the time when DCF filed its Motion for Summary Judgment on May 23, 2019, and when plaintiff filed her Response on June 24, 2019.

Under similar facts, the First Circuit held that a district court did not err when, on summary judgment, it considered a summary chart of the plaintiff's "extensive record of work attendance over her near two-decade period of employment" because Rule 1006 "provides that only the underlying documents, not the summaries themselves, must be produced to the opposing party," and thus the defendant "had no obligation to provide the charts to [plaintiff]." *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 29–32 (1st Cir. 2011). For the same reasons, the court concludes that Exhibit Three contains admissible evidence on summary judgment.

But, after reviewing the information that Exhibit Three summarizes, the court has noted a few errors. *Compare* Doc. 11-3 at 3 (showing that employee F.S. processed 64 applications and plaintiff processed one application between January 19–22, 2019) *with* Doc. 141-3 (showing that employee F.S. processed zero applications and plaintiff processed five applications between January 19–22, 2019).[4] So, when deciding DCF's summary judgment motion, the court uses the underlying employee productivity charts (Aff. of Ronald Blaker & Exs. A & B) for the accurate information, and not the summary chart.

C.     **DCF's Motion for Summary Judgment**

Now, the court addresses the substance of DCF's Motion for Summary Judgment.

---

[4]     The court recognizes that the errors in the summary chart actually favor plaintiff. The chart's incorrect numbers show that plaintiff was more productive than her actual productivity numbers in the underlying employee productivity reports.

### 1. Uncontroverted Facts

The following facts are either stipulated facts taken from the Pretrial Order (Doc. 139), or uncontroverted for purposes of DCF's summary judgment motion.[5]

Every year, the State of Kansas administers a Low Income Energy Assistance Program ("LIEAP"). Doc. 11-4 at 1 (Kimmons Aff. ¶¶ 4–5). And each year, DCF hires temporary Human Services Assistants to process Applications for benefits under LIEAP. Doc. 139 at 4 (Pretrial Order ¶ 2.a.2.). The program runs every year from mid-January through March. Kimmons Aff. ¶ 5. But follow-up work for the program may require some temporary employees to remain employed until May or June. *Id.*

In 2014, DCF hired plaintiff as a temporary employee and Human Services Assistant for LIEAP. Pretrial Order ¶ 2.a.3.; Doc. 11-2 at 1–2 (Locke Aff. ¶¶ 4–5). During the 2014 LIEAP, plaintiff worked less than three weeks processing applications. Pretrial Order ¶ 2.a.4. Later, DCF transferred plaintiff to the Phone Bank because DCF needed more assistance in that area. *Id.* ¶ 6.

---

[5] Plaintiff's Response attempts to controvert DCF's "Statement of Material Facts for Which There Is No Genuine Issue." Doc. 149-1 at 1–10. Plaintiff has followed the court's local rule by numbering "[e]ach fact in dispute . . . by paragraph" and "stat[ing] the number of [DCF's] fact that is disputed." D. Kan. Rule 56.1(b)(1). But, in many instances, plaintiff has failed to "refer with particularity to those portions of the record upon which the opposing party relies" to controvert DCF's material facts. *Id.* Also, many of plaintiff's factual statements include improper argument.

Although plaintiff proceeds pro se, her status as a pro se litigant does not relieve her of the obligation to follow the court's rules. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (citations and internal quotation marks omitted)). Also, plaintiff knows about the federal and local rules governing summary judgment practice because DCF served her with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," as our local rule, D. Kan. Rule 56.1(f), requires. Doc. 142. So, when reciting the uncontroverted facts, the court does not accept any of plaintiff's factual statements that aren't supported by proper evidence. Also, the court disregards plaintiff's improper argument.

In 2016, DCF rehired plaintiff for the 2016 LIEAP. Pretrial Order ¶ 2.a.22. DCF hired plaintiff as a temporary LIEAP Human Services Assistant in the Economic and Employment Services ("EES") department. Pretrial Order ¶ 2.a.28.; Locke Aff. ¶ 3. Shannon Connell and Lewis Kimsey recommended that DCF rehire plaintiff in 2016. Doc. 11-1 at 1 (Kimsey Aff. ¶ 3). Mr. Kimsey has served as the LIEAP Manager since December 2013. Doc. 141-2 at 10 (Defs.' Resp. to Pl.'s Interrog. No. 18). Although plaintiff was not able to provide a reference from a prior employer,[6] Mr. Kimsey accepted her earlier work experience with the LIEAP in lieu of her providing a reference. Kimsey Aff. ¶ 4.

All LIEAP Human Services Assistants are hired as a "999 temporary employee," meaning that they cannot work more than 999 hours within one year of their hire date. Locke Aff. ¶ 5. For the 2016 LIEAP, only four temporary employees were new hires. Kimsey Aff. ¶ 13. The initials of the four new hires are N.D., B.B., P.L., and S.B. *Id.* The rest of the temporary employees were re-hires. *Id.* at ¶ 12. All employees in the 2016 LIEAP received the same training. Kimsey Aff. ¶ 20; Doc. 11-5 at 2 (Henderson Aff. ¶ 11). Plaintiff received training for the LIEAP during her first employment with DCF in 2014, and again during her second employment in 2016. Doc. 141-1 at 4 (Pl.'s Resp. to Defs.' Req. for Admis. No. 14).

---

[6]     Plaintiff asserts that, in fact, she supplied a reference. Doc. 149-1 at 3. For support, she relies on an unauthenticated email sent "in response to an e-mail [plaintiff] sent to the General Dynamics corporate office." Doc. 149-2 at 2. Even if the court could consider this evidence as admissible on summary judgment, the email doesn't provide plaintiff an employment reference. It merely provides contact information for inquires seeking employment references. *Id.* Also, with her summary judgment exhibits, plaintiff includes an email from DCF advising plaintiff that it has not received a manager's reference for her from any previous employers due to company policies and that DCF requires a reference that can speak to her work habits to continue with the recruitment process. Doc. 149-2 at 3. In sum, plaintiff has failed to controvert DCF's factual statement that plaintiff was unable to provide a reference from a prior employer but that Mr. Kimsey accepted her earlier work experience with the LIEAP in lieu of providing a reference.

Stephanie Henderson, a black female, was hired by DCF as a temporary employee to serve as Human Services Assistant/Site Manager for the 2016 LIEAP.  Pretrial Order ¶¶ 2.a.11–12.; Henderson Aff. ¶¶ 1, 5; Locke Aff. ¶ 7.  Like plaintiff, Ms. Henderson was a rehire for LIEAP.  Pretrial Order ¶ 2.a.27.;  Henderson Aff. ¶ 7.  And, as a Site Manager, Ms. Henderson knew what appropriate production levels were for employees, especially for employees who had worked previously for LIEAP.  Henderson Aff. ¶ 7.

In 2016, DCF did not impose daily or weekly quotas on each LIEAP employee or for the program as a whole, although DCF had used a quota system in past years.  Kimsey Aff. ¶ 18.  But DCF did collect processing and registration data for each LIEAP employee, and it prepared weekly productivity reports for those employees.  Doc. 11-3 at 1 (Blaker Aff. ¶ 4).  The reports show both the number of processed applications and the number of pending applications for each day and the total for the week for each LIEAP employee.  Kimsey Aff. ¶ 6.  Human Services Assistant Ronald Blaker prepared the weekly productivity reports and submitted them to LIEAP Manager Lewis Kimsey.  Blaker Aff. ¶¶ 1, 4; Kimsey Aff. ¶ 11.  Mr. Blaker began the process of tracking employee productivity once DCF began taking applications and after training had concluded.[7]  Doc. 141-2 at 8 (Defs.' Resp. to Pl.'s Interrog. No. 14).

In 2016, five of the 17 LIEAP employees were assigned other duties in addition to their responsibilities to process and register applications.  Kimsey Aff. ¶¶ 6, 8–10; Henderson Aff. ¶ 9.  For example, as discussed above, Stephanie Henderson performed managerial duties in her role as Site Manager.  Kimsey Aff. ¶ 8; Henderson Aff. ¶¶ 8–9.  Employee M.H. was a full-time DCF employee temporarily assigned to assist with LIEAP, serving primarily as the filing clerk for the

---

[7]     The parties stipulated to the fact that "[a]ll of the temporary Human Services Assistants spent the first two weeks in training during the 2016 LIEAP program in Kansas City, Kansas."  Pretrial Order ¶ 2.a.30.  And, the parties stipulated that plaintiff's hire date was January 3, 2016.  *Id.* ¶ 28.

program. Kimsey Aff. ¶ 14. Employee E.D. was assigned the mail room and filing as his primary responsibilities. *Id.* ¶ 15. E.D. did not perform any processing and assisted with registrations only as time permitted. *Id.* Employee L.S. was the dedicated employee assigned to handle applications received by facsimile or online, which is a more time-consuming process. Doc. 141-2 at 9–10 (Defs.' Resp. to Pl.'s Interrog. No. 17). And, as discussed, Ronald Blaker was responsible for working with IT to generate production reports. Kimsey Aff. ¶ 10; Henderson Aff. ¶ 9. Also, Mr. Blaker was the "lead worker" responsible for training, processing tough cases, and specialty work. Kimsey Aff. ¶ 9; Blaker Aff. ¶ 5. His primary responsibilities were not processing and registration. Kimsey Aff. ¶ 9.

The employee productivity charts for January 19 to February 12, 2016 show that—among the 12 LIEAP employees who did not have other job responsibilities—plaintiff had the second lowest productivity numbers for both processed and registered applications. Blaker Aff. Exs. A & B. Employee C.D. registered two fewer applications than plaintiff. *Id.* But he processed a total of 570 applications compared to plaintiff's 72 processed applications. *Id.* C.D.'s combined number of processed and registered applications was 828 applications compared to plaintiff's total of 332 applications. *Id.* The employee with the lowest number of processed applications was C.T. *Id.* DCF terminated C.T.'s employment on February 12, 2016—the same day DCF terminated plaintiff's employment. Doc. 149-2 at 19 (Thomas Aff. ¶ 4); Pretrial Order ¶ 2.a.29. Of the group of the 12 LIEAP employees, the two employees with the lowest total number of registered and processed applications were plaintiff and C.T. Blaker Aff. Exs. A & B.

On February 12, 2016, Site Manager Stephanie Henderson recommended to her direct supervisor, LIEAP Manager Lewis Kimsey, that DCF terminate plaintiff's employment based on her substandard performance. Henderson Aff. ¶ 3; Kimsey Aff. ¶ 5. Ms. Henderson made her

recommendation based on her personal observation of plaintiff's work performance as well as her charted performance in the employee productivity reports. Henderson Aff. ¶ 4. Based on the productivity reports, LIEAP Manager Lewis Kimsey also concluded that plaintiff was not performing at an acceptable level. Kimsey Aff. ¶¶ 5–6. And, he recommended to Sandra Kimmons (Director of EES) that DCF terminate plaintiff's employment for "sub-standard job performance as charted and evidenced by [the employee productivity reports]." *Id.* ¶ 5.

On February 12, 2016, DCF terminated plaintiff's employment for substandard performance. Kimmons Aff. ¶ 7. Ms. Kimmons signed the termination letter plaintiff received on February 12, 2016. Pretrial Order ¶ 2.a.29.; Kimmons Aff. ¶ 8 & Ex. 1. On the day of plaintiff's termination, Ms. Kimmons had no specific recollection of plaintiff although she may have interviewed plaintiff in the past. Kimmons Aff. ¶ 9.

Ms. Kimmons, Mr. Kimsey, and Ms. Henderson contend that race was not a factor in the decision to terminate plaintiff's employment. Kimmons Aff. ¶¶ 10, 12; Kimsey Aff. ¶ 21; Henderson Aff. ¶ 6. Of the 17 employees hired for the 2016 LIEAP in the Kansas City region, six of those employees were black females, including Site Manager Stephanie Henderson, who later recommended terminating plaintiff's employment. Kimsey Aff. ¶ 17; Henderson Aff. ¶¶ 3–5. DCF did not hire anyone to replace plaintiff after her termination. Kimsey Aff. ¶ 16; Henderson Aff. ¶ 10.

Plaintiff believes she "was terminated because [Stephanie Henderson] felt her position was in jeopardy due to the fact [plaintiff] possess[es] a Master's Degree in Public Administration with a major in Administration and Organization." Doc. 149-2 at 4 (Fuller Aff. ¶ 1). Also, plaintiff asserts that Ms. Henderson "perceived [plaintiff] as a threat to her temporary Site

Manager/Human Services Assistant position because her predecessor was a permanent Site

Manager, Veronica Knight." *Id.* ¶ 5.

### 2. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine

dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws

inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625

F.3d 1279, 1283 (10th Cir. 2010). A disputed "issue of fact is 'genuine' 'if the evidence is such

that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material'

'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.*

(quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.

Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the

moving party "'need not negate the non-movant's claim, but need only point to an absence of

evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO,

Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party meets its initial burden, the non-moving party "'may not rest upon its

pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those

dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81

F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);

*Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).[8]

---

[8]     When reciting the legal standard governing summary judgment, plaintiff asserts that "[s]ummary judgments 'should seldom be used in employment discrimination cases.'" Doc. 149-1 at 11 (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)). *O'Shea* was a sexual harassment case alleging hostile work environment. *Id.* at 1096. There, our Circuit noted, in the context of sexual harassment claims, that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Id.* at 1098 (citations and internal quotation marks omitted). And, using a *cf.* signal, the Circuit cited an Eighth Circuit case for a different but somewhat analogous proposition—*i.e.*, that "'summary judgment should seldom be used in employment discrimination cases.'" *Id.* (quoting *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997)). Since then, the Eighth Circuit sitting *en banc* has overruled *Smith* and other cases "asserting a different standard of review for summary judgment in employment discrimination cases" because such a standard is "contrary to Supreme Court precedent." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). In *Torgerson*, the Eighth Circuit held: "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Id.* For obvious reasons, the court declines plaintiff's invitation to apply the standard she cites from an overruled Eighth Circuit case.

Also, plaintiff asserts that "[b]ecause discrimination claims often turn on the employer's intent; courts ordinarily consider summary judgment inappropriate to settle an issue like intent." Doc. 149-1 at 11 (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994)). But, *Cone* held that "[a]lthough summary judgment is not ordinarily appropriate for settling issues of intent or motivation . . . all of [plaintiff's] evidence together is insufficient to raise doubts about [defendant's] motivation." *Id.* at 530. So, in that case, the Circuit affirmed summary judgment against plaintiff's employment discrimination claim. *Id.* at 530, 533. *Cone* thus does not preclude the court from granting summary judgment in an employment discrimination case. To the contrary, *Cone* allows summary judgment when the factual record presents no triable issues about an employer's intent.

### 3. Analysis

DCF seeks summary judgment against plaintiff's Title VII claim because, DCF contends, the summary judgment facts, viewed in the light most favorable to plaintiff, present no triable issue whether DCF terminated plaintiff's employment based on her race.

The court analyzes plaintiff's Title VII claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (applying *McDonnell Douglas* to Title VII claim). The *McDonnell Douglas* framework involves a three-step analysis. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

First, a plaintiff must prove a prima facie case of discrimination. *Id.*; *see also Khalik*, 671 F.3d at 1192. A prima facie case of discrimination requires plaintiff to demonstrate that: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192 (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998)); *see also Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (explaining that "the fourth element of a prima facie case is a flexible one that can be satisfied differently in varying scenarios" and "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination" (internal citations and quotation marks omitted)).

Next, if plaintiff meets her prima facie burden, then the burden shifts to defendant "to produce a legitimate, non-discriminatory reason for the adverse employment action." *Khalik*, 671 F.3d at 1192 (citing *Garrett*, 305 F.3d at 1216). And, last, if defendant produces such a reason, the burden then shifts back to plaintiff to show that "plaintiff's protected status was a

determinative factor in the employment decision or that the employer's explanation is pretext."
*Id.* (citing *Garrett*, 305 F.3d at 1216).

### a. Prime Face Case

Here, DCF doesn't address the first step in the *McDonnell Douglas* test—*i.e.*, whether plaintiff has satisfied her burden to establish a prima facie case of discrimination. Thus, the court will assume, without deciding, that plaintiff has presented a triable issue on the first step of the *McDonnell Douglas* test.

### b. Legitimate, Non-Discriminatory Reason

Turning to the second step of *McDonnell Douglas*, DCF asserts that the summary judgment facts present no genuine issue whether DCF terminated plaintiff's employment based on the legitimate, non-discriminatory reason of substandard performance. The court agrees. The employee productivity charts establish that plaintiff was one of the two least productive employees during the 2016 LIEAP. The employee productivity charts show the number of applications that each of the 17 LIEAP employees processed and registered between January 19 and February 12, 2016. Plaintiff has not controverted the fact that five of the 17 LIEAP employees were assigned other duties in addition to their responsibilities of processing and registering applications. So, as DCF explains, the productivity numbers for those five employees are not comparable to the other 12 LIEAP employees because the five employees spent their time performing managerial, filing, training, or other responsibilities in addition to processing and registering applications.

After removing these five employees from the productivity charts and considering only the remaining 12 LIEAP employees, the uncontroverted facts establish plaintiff had the second lowest productivity for the total number of registered and processed applications. The employee

with the lowest total number was C.T.—whom DCF also terminated from her employment on February 12, 2016, the same day it terminated plaintiff.

### c. Pretext

Finally, at the last step of the *McDonnell Douglas* test, the burden shifts back to plaintiff, requiring her to establish a genuine issue for trial whether DCF's articulated reason for her employment termination was pretext for discrimination. "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citations and internal quotation marks omitted). A plaintiff can satisfy this burden "'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id.* (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013)). Here, plaintiff asserts she can establish pretext in several ways.

*First*, plaintiff contends that her work performance was not substandard. But plaintiff cannot show pretext by asserting her subjective belief that she performed successfully. The Tenth Circuit has cautioned courts that they "may not second guess the business judgment of the employer." *Id.* (citing *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017)); *see also Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) ("The courts may not act as a super personnel department that second guesses employers' business judgments." (citation and internal quotation marks omitted)). "'In determining whether the proffered reason for a decision was pretextual, [the court] examine[s] the facts as they appear *to the person making the decision*,' and 'do[es] not look to the plaintiff's subjective evaluation of the situation.'" *Id.* (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011)).

"Instead of asking whether the employer's reasons 'were wise, fair or correct,' the relevant inquiry is whether the employer 'honestly believed those reasons and acted in good faith upon those beliefs.'" *Id.* (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007)).

Here, the undisputed summary judgment facts establish that Site Manager Stephanie Henderson recommended to LIEAP Manager Lewis Kimsey that DCF terminate plaintiff's employment based on her substandard performance. Ms. Henderson recommended plaintiff's termination based on her personal observation of plaintiff's work performance and plaintiff's low productivity numbers, as documented by the employee productivity reports. Mr. Kimsey agreed that the productivity reports showed that plaintiff was performing at a substandard level. So, he recommended to EES Director Sandra Kimmons that DCF terminate plaintiff's employment for substandard job performance. In sum, the undisputed facts establish that DCF based its termination decision on plaintiff's poor performance as evidenced and documented by the productivity reports.

Trying to create a question of fact, plaintiff makes several conclusory assertions to discredit the reliability of the employee productivity reports used by DCF to make the termination decision. Plaintiff contends that, like the five employees with other responsibilities, she also had other responsibilities such as collecting, delivering, and sorting mail in the mail room. Doc. 149-1 at 12. But plaintiff cites no summary judgment evidence to support this purported fact, and the court has not found any evidence in the summary judgment record to support plaintiff's assertion. Also, plaintiff asserts, DCF assigned one-page applications to new hires while assigning seven-page applications to rehires, like plaintiff. Doc. 149-1 at 3–4, 12–13. Plaintiff contends that an employee can register and process one-page applications more quickly

than a longer application.  *See id.* at 4 (asserting that it takes an employee "usually less than ten minutes" to process a one-page application and that "is the only reason C.D. could have processed more applications than any new hires or rehires.").  But again, plaintiff provides no summary judgment evidence to support this factual assertion.  Plaintiff's assertions that her work performance was not poor rely solely on her subjective beliefs.  And, plaintiff's subjective evaluation of her work performance does not establish pretext.  *DePaula*, 859 F.3d at 970 ("In determining whether the proffered reason for a decision was pretextual, [the court] . . . do[es] not look to the plaintiff's subjective evaluation of the situation." (citation and internal quotation marks omitted)).

Plaintiff also takes issue with DCF's assertion that it began tracking employee productivity once DCF began taking applications and after training concluded.  The parties stipulated in the Pretrial Order that the 2016 LIEAP employees spent the first two weeks of their employment in training.  Pretrial Order ¶ 2.a.30.  And, the parties stipulated, DCF hired plaintiff on January 3, 2019.  *Id.* ¶ 28.  The productivity reports begin tracking employees' work on January 19, 2019.  Blaker Aff. Exs. A & B.  So, the beginning date of the productivity reports is consistent with the parties' stipulation that DCF began tracking productivity after the two-week training ended.

But plaintiff asserts that training did not end until February 1, 2019.  Indeed, Site Manager Stephanie Henderson asserts in her Affidavit that training ended on that date.  Doc. 11-5 at 2 (Henderson Aff. ¶ 12).  This discrepancy, however, is not a *material* disputed issue of fact that precludes summary judgment against plaintiff's Title VII claim.  The undisputed facts establish that plaintiff was the second least productive employee during the time DCF tracked performance of all LIEAP employees.  Even if training was not yet completed when tracking

started, all employees had received the same training when DCF started tracking their productivity. Kimsey Aff. ¶ 20; Henderson Aff. ¶¶ 11–12. Also, plaintiff already had received training in 2014, during her previous employment with DCF. So, her 2016 training represented the second time she received training in the LIEAP program. This undisputed fact means that plaintiff had received more training than the new employees in 2016 when DCF began tracking their work.

Also, if one disregards the productivity numbers before February 1, 2019, and considers only the productivity numbers after that date, the productivity reports show that plaintiff still was one of the two least productive employees for the number of total processed applications after February 1.[9] Plaintiff asserts that evaluating the employees' work performance for just "nine days after the end of training classes is not sufficient time to evaluate an employee's performance." Doc. 154 at 2. But plaintiff offers no summary judgment facts to support this assertion. And, even if she had, it's not the court's job to "second-guess the business judgment of the employer." *DePaula*, 859 F.3d at 970 (citation and internal quotation marks omitted).

For all these reasons, the summary judgment facts do not present a triable issue whether plaintiff's work performance was substandard.

*Second*, plaintiff asserts that DCF's reason for terminating her employment is pretextual because DCF never imposed quotas on its LIEAP employees. DCF concedes that it never imposed any quotas. But, it's undisputed, DCF did track employee productivity using the productivity reports. Plaintiff appears to confuse these two concepts as one. But, imposing a quota on an employee differs from evaluating the employee's work performance based on

---

[9]      The productivity reports for February 1 through 12, 2019 show that plaintiff had 53 processed applications. Employee C.T. had 11 processed applications. All the other 10 LIEAP employees had more processed applications during this time than both plaintiff and C.T.—the two employees who DCF terminated on February 12, 2019.

productivity.  After making a productivity evaluation, if the employer terminates an employee for low productivity, that does not mean the employer has imposed a quota.

Also, as DCF explains, the law does not require an employer to base an employment decision on a written policy—such as a quota.  As the Tenth Circuit has explained, "an otherwise reasonable justification for a business decision" doesn't "somehow lose[ ] its legitimacy simply because it reflects an exercise of managerial judgment rather than a ministerial execution of written policy."  *Medlock v. United Parcel Serv. Inc.*, 608 F.3d 1185, 1192 (10th Cir. 2010).  To the contrary, courts have decided "countless employment discrimination cases . . . on the basis of legitimate business justifications without any reference to formal policies necessarily legitimizing those justifications."  *Id.* at 1193.  To hold otherwise "would render suspect innumerable decisions required in the practical operation of the workplace, leaving the management of businesses open to just the sort of second-guessing the case law consistently admonishes against."  *Id.*  So here, to the extent plaintiff asks the court to find pretext because DCF terminated plaintiff's employment based on low productivity while not imposing any production quotas, the court declines to do so.  "The law does not permit, much less require" such a finding "simply because [the business] judgment had not been preordained by a written policy."  *Id.*

*Third*, plaintiff asserts her own beliefs about why DCF terminated her employment.  But plaintiff cites no admissible summary judgment evidence to support her assertions.  And plaintiff can't establish pretext based on mere speculation.  *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1237–38 (10th Cir. 2015) (affirming summary judgment against plaintiff's Title VII retaliation claim because plaintiff "merely advanced speculative theories" that failed to demonstrate pretext); *see also Webster v. Shulkin*, 707 F. App'x 535, 542 (10th Cir. 2017) (holding that

plaintiff's "claims don't rise above the level of speculation, which is insufficient to demonstrate pretext").

Also, plaintiff has made speculative assertions about the reason for her termination that flatly contradict her race discrimination claim. By affidavit, plaintiff asserts that she "was terminated because [Stephanie Henderson] felt her position was in jeopardy due to the fact [plaintiff] possess[es] a Master's Degree in Public Administration with a major in Administration and Organization." Doc. 149-2 at 4 (Fuller Aff. ¶ 1). Also, plaintiff contends, Ms. Henderson considered plaintiff a threat to her Site Manager position. *Id.* Even if the court accepts as true plaintiff's assertion that DCF terminated her employment because Ms. Henderson considered plaintiff a threat to her job, this reason won't support a finding of pretext or amount to illegal *race* discrimination under Title VII.

*Fourth*, plaintiff claims that DCF offered inconsistent reasons for her termination. Doc. 152 at 2. The summary judgment facts won't support this assertion. Plaintiff's Affidavit asserts that Stephanie Henderson escorted plaintiff to Human Resources on the day of plaintiff's termination. Doc. 149-2 at 6 (Fuller Aff. ¶ 13). And, plaintiff contends, Ms. Henderson told plaintiff that she didn't know why Human Resources had summoned plaintiff for a meeting. *Id.* Accepting plaintiff's assertions a true, DCF never provided inconsistent reasons for the termination. Ms. Henderson merely told plaintiff that she didn't know the reason for the meeting with Human Resources. She never told plaintiff that DCF was terminating her employment, much less a reason for that decision that differs from DCF's stated reason for the termination. Instead, the summary judgment facts establish that DCF has given only one reason for plaintiff's termination: poor work performance.

*Finally*, DCF asserts that the summary judgment facts support an inference that DCF's proffered reason for the termination is not pretextual. DCF asserts that the "same actor" inference applies here because Mr. Kimsey was the "same actor" involved in plaintiff's hiring and firing within a two-month period.

The "same actor inference" is premised on the idea that it "makes little sense to deduce" that an individual would hire an employee, being fully aware of her race, and then fire that same employee a short time later based on the employee's race. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006). The Tenth Circuit held in *Antonio* that "in cases where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* (citation and internal quotation marks omitted).

Here, the undisputed facts establish that LIEAP Manager Lewis Kimsey was one of two people who recommended that DCF rehire plaintiff in 2016. Also, during the hiring process, Mr. Kimsey allowed plaintiff to rely on her 2014 work performance with LIEAP in lieu of providing an employer reference. Then, less than two months later, Mr. Kimsey was one of two people who recommended that DCF terminate plaintiff's employment based on substandard work performance. Thus, DCF contends, the same actor inference should apply here. But, our Circuit has "yet to decide whether the same-actor inference applies when a person who was instrumental in the hiring and termination of an employee . . . is not necessarily the sole decisionmaker." *Matthews v. Euronet Worldwide, Inc.*, 271 F. App'x 770, 773 n.2 (10th Cir. 2008) (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (applying the same-actor inference where a supervisor knew plaintiff was pregnant when she was hired and the supervisor was also one of three people involved in the decision to discharge her)). Here, the undisputed facts don't

establish that Mr. Kimsey was the sole decisionmaker in plaintiff's hiring and firing. So, the court declines to apply the same actor inference.

In any event, the court need not apply the inference to conclude that summary judgment is warranted. Even without the same actor inference, plaintiff has failed to come forward with disputed facts sufficient to present a triable issue whether DCF's proffered reason for plaintiff's termination is pretext. *See, e.g.*, *Braun v. St. Pius X Parish*, 509 F. App'x 750, 753 (10th Cir. 2013) (affirming summary judgment because plaintiff had failed to establish pretext "whether or not [the Circuit] appl[ied] the 'same actor' inference").

In sum, the summary judgment facts, viewed in plaintiff's favor, present no triable issue whether DCF's legitimate, non-discriminatory reason for plaintiff's termination is unworthy of belief. The court thus grants summary judgment against plaintiff's Title VII claim.[10]

## II.      Plaintiff's Motion for Reconsideration of the Court's July 24, 2019 Order

Next, the court addresses plaintiff's "Motion for Reconsideration Granting Defendants' Dismissal." Doc. 159. On July 24, 2019, the court granted defendants Stephanie Henderson, Sandra Kimmons, Lewis Kimsey, and Lisa Locke's ("the individual defendants") Motion to Dismiss. Doc. 153. The court held that plaintiff's § 1983 claims against the individual defendants failed to state a claim for relief because plaintiff never identified the substantive federal right that the individual defendants allegedly had violated. *Id.* at 5. So, the court dismissed the individual defendants from the case. *Id.*

Plaintiff challenges the court's ruling with her Motion for Reconsideration. Our court treats motions that ask it to revise dispositive orders decided before the court has entered

---

[10]      DCF also moves for summary judgment against plaintiff's punitive damages claim under Title VII. Doc. 141 at 14. Because the court grants summary judgment against plaintiff's Title VII claim, the court need not decide whether DCF is entitled to summary judgment against plaintiff's punitive damages claim.

judgment as motions for reconsideration under D. Kan. Rule 7.3. *Ferluga v. Eickoff*, 236 F.R.D. 546, 549 (D. Kan. 2006) (treating a motion to alter or amend a dispositive but non-final order as a motion for reconsideration under D. Kan. Rule 7.3). D. Kan. Rule 7.3 requires a movant to file a motion seeking reconsideration within 14 days after the order is filed. D. Kan. Rule 7.3(b). Plaintiff filed her Motion for Reconsideration on August 13, 2019—more than 14 days after the court entered its July 24, 2019 Order. So, plaintiff's request for reconsideration is untimely under the court's local rule.

Also, D. Kan. Rule 7.3 requires a movant to base a motion for reconsideration on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error to prevent manifest injustice." D. Kan. Rule 7.3(b); *see also Ferluga*, 236 F.R.D. at 549 (applying D. Kan. Rule 7.3(b) to a dispositive order and noting that the rule's requirements "are essentially identical" to Fed. R. Civ. P. 59(e)). So, "a motion for reconsideration is appropriate [only] where the court has misapprehended the facts, a party's position, or the controlling law." *Ferluga*, 236 F.R.D. at 549 (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Such a motion "is not [an] appropriate [device] to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citing *Servants of Paraclete*, 204 F.3d at 1012).

Plaintiff satisfies none of the three prerequisites for the court to reconsider its Order dismissing the individual defendants. Plaintiff never identifies any intervening change in controlling law. Plaintiff never asserts that new evidence is available now to oppose the individual defendants' dismissal arguments. And plaintiff never argues there is a need to correct clear error or prevent manifest injustice that requires the court to reconsider its earlier ruling. Instead, plaintiff's Motion for Reconsideration argues the merits of her Title VII claim against

DCF—*i.e.*, that DCF terminated her employment because of her race. These arguments are not a proper reason for the court to reconsider its July 24, 2019 Order—an Order that concluded plaintiff had failed to state a plausible § 1983 claim against the individual defendants.

For all these reasons, plaintiff has failed to show that reconsideration of the court's July 24, 2019 Order is timely or warranted under D. Kan. Rule 7.3. The court thus declines to reconsider its July 24, 2019 Order. And, it denies plaintiff's motion (Doc. 159).

### III.    DCF's Motion to Review Magistrate Order of April 9, 2019

Finally, the court considers DCF's Motion to Review Magistrate Order of April 9, 2019. Doc. 129. On April 9, 2019, Magistrate Judge James P. O'Hara issued an Order granting plaintiff's Motion to Compel DCF to provide the names and addresses of each person DCF employed during the 2016 LIEAP. Doc. 128. In her Motion to Compel, plaintiff explained that she required the information because her coworkers had information about what supervisors told employees during their morning meetings about their job responsibilities, "including whether they were required to process a set minimum number of LIEAP application per day." *Id.* at 2. Judge O'Hara concluded that the employee contact information was relevant to plaintiff's claims and that the Kansas Administrative Regulations did not protect the contact information from disclosure. *Id.* at 3–4. Thus, Judge O'Hara ordered DCF to provide the contact information to plaintiff by April 19, 2019. *Id.* at 4.

DCF filed an Objection to Judge O'Hara's Order under Fed. R. Civ. P. 72 and D. Kan. Rule 72.1.4. Doc. 129. But, DCF also complied with its obligation to provide the contact information to plaintiff by April 19, 2019, as Judge O'Hara had ordered. *See* Doc. 133 (Certificate of Service showing service of DCF's Supplemental Response to Plaintiff's Interrogatories), Doc. 137 at 1 (representing that DCF complied with Judge O'Hara's Order

because DCF provided to plaintiff by email and U.S. mail a supplemental response to discovery with the last known addresses of plaintiff's coworkers in the 2016 LIEAP), Doc. 138 (Judge O'Hara's Order denying plaintiff's "Motion to Advise" as moot because DCF had provided the supplemental discovery as Judge O'Hara had ordered).

DCF objects to Judge O'Hara's Order because, DCF argues, it allows plaintiff to conduct discovery after the discovery deadline has ended, and it deprives DCF from discovering information about what previously undisclosed witnesses may know about plaintiff's allegations. Thus, DCF asks the court to overturn Judge O'Hara's Order and deny plaintiff's Motion to Compel. Alternatively, DCF asks the court to: (1) reopen discovery, (2) compel plaintiff to respond to DCF's interrogatory that asks plaintiff to identify each person she contends has knowledge about her race discrimination claim, and (3) allow the parties to conduct an additional three months of discovery so that DCF can depose any new witnesses plaintiff identifies. Doc. 129 at 3.

Plaintiff never has responded to DCF's Motion to Review. For this reason, the court could grant DCF's Motion to Review as unopposed. *See* D. Kan. Rule 7.4(b) ("If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice."). But, because the court has granted DCF's summary judgment motion against plaintiff's Title VII claim, the Motion to Review Judge O'Hara's April 9, 2019 Order is moot. Judge O'Hara's Order has not prejudiced DCF by allowing plaintiff to secure additional discovery after the discovery deadline. The court thus denies as moot the Motion to Review (Doc. 129).

**IV.     Conclusion**

For the reasons explained, the court grants DCF's Motion for Summary Judgment.  And the court dismisses this case.  Also, the court rules the parties' other pending motions as set forth above.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Kansas Department of Children and Families's Motion to Review Magistrate Order of April 9, 2019 (Doc. 129) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendant Kansas Department of Children and Families's Motion for Summary Judgment (Doc. 140) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff Clara R. Fuller's Motion for Reconsideration for an Extension of Time to Respond to Summary Judgment (Doc. 146) is denied as moot.

**IT IS FURTHER ORDERED THAT** plaintiff Clara R. Fuller's Motion to Strike Exhibit Three (Doc. 148) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff Clara R. Fuller's Motion for Reconsideration (Doc. 159) of the court's July 24, 2019 Order dismissing the individual defendants is denied.

**IT IS SO ORDERED**.

**Dated this 20th day of September, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**